UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELINA NUNES, EMANUEL ALVES, D.X. (a minor child), and L.X. (a minor child),<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF STANISLAUS, KRISTEN JOHNSON, and ERIC ANDERSON,<br><br>Defendants. | No. 1:17-cv-00633-DAD-SAB<br><br>ORDER DENYING MOTION TO DISMISS<br><br>(Doc. No. 10) |

This matter concerns plaintiffs' claims for damages sustained following the temporary removal of their children, D.X. and L.X., from plaintiffs' custody by defendants. The complaint in this action was filed on May 5, 2017. (Doc. No. 1.) Defendants moved to dismiss the complaint on July 10, 2017. (Doc. No. 10.) Plaintiffs filed an opposition on August 1, 2017, and defendants filed a reply on August 8, 2017. (Doc. Nos. 15, 16.) A hearing was held on August 15, 2017, at which attorneys Robert Powell and Sarah Marinho appeared telephonically on behalf of plaintiffs and attorney Amanda Heitlinger appeared on behalf of defendants. For the reasons set forth below, defendants' motion to dismiss will be denied.

**BACKGROUND**

As noted, this action stems from the removal of D.X. and L.X. from the custody of plaintiffs Nunes and Alves for a period of 51 days during the summer of 2016. Given the

1

voluminous nature of plaintiffs' complaint, the court synopsizes the factual allegations, which are taken as true for purposes of this motion, below.

Plaintiffs first noticed that their five-month-old son, L.X., had a small bump on his head on July 9, 2016. Despite having called a nurse consultation line and been told that the bump was no cause for concern, plaintiffs nevertheless took L.X. into a Kaiser hospital in Modesto the following day for an appointment concerning the bump. At the appointment on July 10, 2016, a doctor advised plaintiffs that he thought it was likely just an old bruise and nothing to be concerned about. At plaintiff Nunes's insistence and in response to her inquiries about whether more could be done, the doctor ultimately arranged for L.X. to receive a CT scan, which showed a one millimeter skull fracture at the site of the bump. Medical staff then began questioning plaintiffs about how the injury occurred, as well as examining L.X. for signs of abuse, of which none were found. Plaintiffs advised the medical personnel that they were unsure of how the injury had occurred, and could think of only two possible causes: (1) L.X's fall from his sister D.X.'s bed several weeks prior, or (2) an incident where the couples' seventy-pound pitbull leapt onto the bed and may have injured L.X. in the process. Nevertheless, the plaintiffs maintained they had not noticed any symptoms indicative of a more significant injury to L.X, such as vomiting, fever, diarrhea, cessation of breathing, or incessant crying.

Later that day, plaintiffs were transported by ambulance to another Kaiser hospital in Roseville, California. Plaintiff Nunes and L.X. were held at the hospital overnight. The following day, July 11, 2016, plaintiff Nunes met for the first time with defendant Johnson, a social worker from Child Protective Services ("CPS"), at approximately 2:00 p.m. Defendant Johnson separately interviewed both plaintiffs Nunes and Alves at the hospital, requested and received drug tests from both, and ultimately advised them that L.X. and D.X. would be removed from their custody pending completion of an investigation into whether plaintiffs had injured L.X. No other signs of abuse or neglect of the children were discovered, and both the parents and D.X. denied that any abuse ever occurred. Plaintiffs' complaint indicates the decision to remove the children from their home was based on either the unfounded suspicions of an unidentified nurse or a general, unspecific distrust of plaintiff Alves. Defendant Johnson then requested that

2

plaintiffs sign a "Safety Plan," allowing the children to stay with plaintiff Nunes' sister Patrina during the investigation. Plaintiff Nunes signed the plan, believing she was required to and that she would not be allowed to retain custody of her children regardless. Plaintiff Alves, upset that the children were being removed from their home, refused to sign the plan. The children were then placed with Patrina. Plaintiffs were allowed to visit the children during the day, but were not allowed to spend the night in the same house with them or visit with them unsupervised during the duration of their removal.

Despite assurances from defendant Johnson that the entire matter would be resolved in a few days, the investigation did not conclude for more than seven weeks following the children's removal from plaintiffs' custody. Over this period, plaintiff Nunes contacted defendant Johnson and her supervisor, defendant Anderson, on innumerable occasions to inquire about the status of the investigation and when her children would be returned to her. Defendants Johnson and Anderson repeatedly advised her that the investigation would be resolved quickly and the removal of her children would be ended. However, the investigation dragged on for two predominant reasons: (1) defendant Johnson was dilatory in seeking the production of medical records related to L.X.'s hospital admittance; and (2) both defendants delayed resolving the investigation until they received an opinion from a child abuse expert retained by CPS.

Defendant Johnson did not initiate the process of attempting to procure L.X.'s hospital records until more than a week after the children had been removed from the home. On July 19, 2016, eight days after the children's removal, defendant Johnson first asked plaintiff Nunes to sign authorization forms permitting the release of the hospital records. Plaintiff Nunes continued to inquire with the various hospitals at which her son had been seen to determine if defendant Johnson had requested L.X.'s medical records yet. Plaintiff Nunes confirmed with the hospitals that defendant Johnson had made no record requests as of July 25, 2016, two weeks after the children's removal. According to plaintiffs, the records were received by CPS sometime between July 25, 2016 and July 28, 2016, at which point defendants Johnson and Anderson advised plaintiff Nunes that the investigation could not be closed until their expert had reviewed the medical files. Plaintiff Nunes then began inquiring as to when that review would take place.

3

During this intervening time, plaintiffs Nunes and Alves were both polygraphed by a detective from the local police department and, thereafter no criminal charges were brought against them.

Subsequently, the defendants were unable to contact their expert—a Dr. Crawford—until he returned from vacation sometime after August 10, 2016, approximately a month following the removal of the children from plaintiffs' custody. Following his return, Dr. Crawford did not begin reviewing plaintiffs' case until almost three weeks later, on August 29, 2016, owing to inadequate medical records having been retrieved by defendants Johnson and Anderson. Dr. Crawford finished his review two days thereafter, on August 31, 2016, and advised defendants Johnson and Anderson that a review of the medical records could not demonstrate whether the injury was inflicted intentionally or accidentally. Because of this, the defendants decided to release L.X. and D.X. back into the custody of plaintiffs Nunes and Alves.

In numerous conversations with defendants Johnson and Anderson, plaintiff Nunes felt she was being threatened, as the defendants referenced on more than one occasion that she was "lucky" to have the child placed with her sister and not in the foster care system. Plaintiff Nunes interpreted this to mean the defendants would have her sister's custody of the children revoked and have them placed into an anonymous foster care home if she did not comply with their requests or if she retained her own attorney. Defendants Johnson and Anderson also accused plaintiff Nunes of injuring her child, and mocked her when she talked about getting a lawyer to determine what rights she had to contest the CPS removal.[1]

Plaintiffs filed their complaint in this action on May 5, 2017, alleging the following five causes of action: (1) on behalf of all plaintiffs for violation of their Fourteenth Amendment right to familial association; (2) on behalf of D.X. and L.X. for unlawful seizure in violation of the Fourth Amendment; (3) on behalf of all plaintiffs for the continued detention of the children following their removal until the family was reunited; (4) on behalf of all plaintiffs for a violation of their right to privacy under the California Constitution; and (5) on behalf of all plaintiffs for intentional infliction of emotional distress. (Doc. No. 1 at ¶¶ 486–515.) Plaintiffs also alleged

---

[1] Plaintiffs' complaint details numerous, increasingly hostile conversations between the parties over the course of the investigation.

*Monell* claims against Stanislaus County for each of the constitutional violations, and claimed that defendant Stanislaus County is vicariously liable for the harms inflicted in violation of state law by defendants Johnson and Anderson. (*Id.*)

**LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. *See also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

/////

**ANALYSIS**

Defendants advance several arguments in summary fashion in moving to dismiss the complaint: (1) Stanislaus County cannot be held vicariously liable for any of plaintiffs' constitutional claims because 42 U.S.C. § 1983 does not allow for *respondeat superior* liability; (2) plaintiffs fail to state any constitutional claims against defendants Johnson and Anderson; (3) plaintiffs fail to state a cognizable *Monell* claim against Stanislaus County for any of the alleged constitutional injuries; (4) plaintiffs fail to allege sufficient facts to state an intentional infliction of emotional distress ("IIED") claim against defendants; (5) defendants are entitled to immunity with respect to plaintiffs' IIED claims; and (6) plaintiffs' complaint fails to allege sufficient facts to support a claim for punitive damages. (Doc. No. 11 at 1–9.) Alternatively, defendants move for a more definite statement. (*Id.* at 10.) The court will address these arguments in turn.

**A. Vicarious Liability Under 42 U.S.C. § 1983**

It is well-established "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 691 (1978); *see also Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997). Here, however, plaintiffs are not alleging in their complaint that Stanislaus County is liable on any of the § 1983 causes of action solely because it employed the individual defendants. The complaint specifically cites to *Monell* in alleging claims against Stanislaus County, which allows municipalities to be held liable for their own constitutional violations. (Doc. No. 1 at ¶¶ 14–17, 489, 508–15.) Likewise, plaintiffs are not alleging that defendant Anderson is responsible for the alleged constitutional violations solely because of his supervisory role. (*See* Doc. No. 16 at 2.) The facts pled in the complaint give rise to a plausible inference that defendant Anderson knew about and directed the removal of the children from their parents, and was personally involved in deciding when they would be returned. *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (noting supervisors may be held liable under § 1983 if the plaintiff can show their "personal involvement in the constitutional deprivation"). Defendants' motion to dismiss will therefore be denied to the

/////

extent it is based on the argument that plaintiff has alleged a claim solely based on an assertion of vicarious liability.²

**B.    Constitutional Claims Against Defendants Johnson and Anderson**

While the caption of this argument advanced in defendants' motion to dismiss states plaintiffs have failed to state a claim under either the Fourth or Fourteenth Amendment against defendants Johnson and Anderson, the text of the motion indicates defendants actually intended to argue they are entitled to qualified immunity as to any constitutional such claims. (Doc. No. 11 at 4–5.) Specifically, defendants argue:

> Under the facts alleged in the Complaint, Johnson and Anderson are entitled to qualified immunity as social workers working in their official capacity. The Complaint alleges that Plaintiff Nunes signed a "safety plan" allowing the [sic] L.X. and D.X. to stay in the care of her sister while the investigation into L.X.'s injury was underway. (Complaint, ¶143 and ¶149). In the [sic] light of a parental consent, there is no clear violation of the 4th or 14th Amendments. Accordingly, Johnson and Andersen [sic] are entitled to qualified immunity for the first, second, and third Claims alleged in Plaintiffs' Complaint.

(Doc. No. 11 at 5.)

However, defendants fail to provide any citations to legal authority in support of this argument , outside of cases generically discussing the nature of qualified immunity. In moving to dismiss, defendants do not explain why plaintiff's signing a safety plan is relevant to the question of qualified immunity. The burden of establishing an affirmative defense, such as qualified immunity, is on defendants. *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 91–92 (noting the "longstanding convention" that defendant bears burden of demonstrating affirmative defenses); *Crawford-El v. Britton*, 523 U.S. 574, 587 (1998) ("[Q]ualified immunity is an affirmative defense and . . . 'the burden of pleading it rests with the defendant.'") (quoting *Gomez v. Toledo*, 446 U.S. 635, 639–41 (1980)); *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir.

---
² The court's standing order requires the parties to "discuss thoroughly the substance of [any] contemplated motion" prior to its filing. (*See* Doc. No. 3-1 at 2.) It appears to the court that this issue is one the parties could have clarified through discussion and amendment, if necessary, thereby obviating the need for a court order. Especially in light of this court's docket, the parties are encouraged to resolve disputes without court intervention, where possible.

7

1993) ("Qualified immunity is an affirmative defense that should be pled by the defendant."). To the extent defendants' motion to dismiss is based on the assertion that they are entitled to qualified immunity, it will be denied.

**C.** ***Monell* Claims Against Stanislaus County**

1. *Motion to Strike*

Defendants move first to strike plaintiffs' sixth cause of action as duplicative of the *Monell* liability plaintiffs are already asserting in their other causes of action. (Doc. No. 11 at 5.) Plaintiffs acknowledged in their complaint the claim was duplicative. (Doc. No. 1 at ¶ 508) ("PLAINTIFFS do not believe that a Claim for Relief based on a "*Monell*" theory of liability against COUNTY, need be separately stated as a Claim for Relief in a complaint, . . . However, in an abundance of caution, a "*Monell*" claim is included hereby . . . separately as a claim for relief.").

"The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)). A decision whether to strike certain material is committed to the sound discretion of the district court. *Id.*; *Fed. Sav. & Loan Ins. Corp. v Gemini Mgmt.*, 921 F.2d 241, 244 (9th Cir. 1990). Since the parties agree plaintiffs have sought to state *Monell* claims in this case, defendants' motion to strike is unnecessary and will, therefore, be denied.[3]

2. *Failure to Allege Sufficient Facts to Support* Monell *Claim*

Defendants also argue plaintiffs have not alleged sufficient facts to support a *Monell* claim against Stanislaus County. (Doc. No. 11 at 5–7.) The Ninth Circuit has noted that, in order to establish liability under *Monell* a plaintiff must ultimately prove "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that

---

[3] *See* fn. 2, above.

8

the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)). Defendants argue "there are no facts alleged which would tend to support the third or fourth prongs of Monell." (Doc. No. 11 at 7.)

Defendants' argument is unpersuasive. There is a well-established constitutional right for parents and children not to "be separated by the state without due process of law except in an emergency." *Wallis v. Spencer*, 202 F.3d 1126, 1136–37 (9th Cir. 2000). This requires the state to have "specific, articulable evidence that provides reasonable cause to believe that a child is in imminent danger of abuse." *Id.* at 1138.[4] Plaintiff has presented extensive factual allegations that tend to depict them as concerned parents seeking medical treatment for a minor injury suffered by their child, even though medical personnel initially dismissed their requests because they viewed the injury to be too minor to be worthy of treatment. Plaintiffs allege that, apparently due to vague suspicions and hunches, L.X. was removed from their custody for no more reason than the mere fact that he had an injury. In their complaint plaintiffs allege numerous facts tending to establish a complete absence of any indication, other than the fact of the injury itself, that L.X. had ever been the victim of abuse, much less that he was in "imminent danger of abuse." *Wallis*, 202 F.3d at 1138. Further, plaintiffs specifically allege it was Stanislaus County's policy to allow the removal of children without due process and in the absence of exigent circumstances, and that the County failed to implement any training for its employees to prevent children from being removed from their home in non-emergency situations. (*See* Doc. No. 1 at ¶¶ 508–15.) Accordingly, defendants' motion to dismiss plaintiffs' *Monell* claims will be denied.

### D. Intentional Infliction of Emotional Distress

#### 1. Insufficient Allegations of Extreme or Outrageous Conduct

Defendants argue plaintiffs' IIED claims must be dismissed because there are insufficient facts alleged in the complaint to establish that defendant Johnson or Anderson's conduct was

---

[4] The parents' claims with respect to this separation sound under the Fourteenth Amendment and the children's under the Fourth Amendment, but the two are analyzed together, "[a]s the same legal standard applies." *Wallis*, 202 F.3d at 1137 n.8.

"extreme or outrageous." (Doc. No. 11 at 8.) A claim for intentional infliction of emotional distress under California law requires a plaintiff to establish, among other elements, "extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard [for] the probability of causing, emotional distress." *Ravel v. Hewlett-Packard Enterprise, Inc.*, 228 F. Supp. 3d 1086, 1099 (E.D. Cal. 2017) (quoting *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009); *see also Wilkins v. National Broad. Co., Inc.*, 71 Cal. App. 4th 1066, 1087 (1999). To be sufficiently extreme and outrageous conduct, the actions alleged "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Cochran v. Cochran*, 65 Cal. App. 4th 488, 494 (1998) (quotations omitted); *see also Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993); *Rangel v. Bridgestone Retail Operations, LLC*, 200 F. Supp. 3d 1024, 1032 (C.D. Cal. 2016). While the court may, in certain instances, conclude the specific conduct alleged is insufficiently outrageous to sustain such a claim as a matter of law, *see Davidson v. City of Westminster*, 32 Cal. 3d 197, 210 (1982), this element of the claim is commonly seen as a factual issue. *See Yun Hee So v. Sook Ja Shin,* 212 Cal. App. 4th 652, 672 (2013) ("Thus, whether conduct is 'outrageous' is usually a question of fact."); *Ragland v. U.S. Bank Nat'l Assoc.*, 209 Cal. App. 4th 182, 204 (2012) ("Whether conduct is outrageous is usually a question of fact."); *Spinks v. Equity Residential Briarwood Apts.*, 171 Cal. App. 4th 1004, 1045 (2009) ("In the usual case, outrageousness is a question of fact."); *Hawkins v. Bank of America N.A.*, No. 2:16-cv-00827-MCE-CKD, 2017 WL 590253, at *5 (E.D. Cal. Feb. 14, 2017).

Here, plaintiffs have pleaded facts that, if proven, would establish their children were removed from their custody for more than seven weeks and that they were subjected to an intrusive investigation by CPS solely because their child had suffered an unexplained injury. Assuming the facts alleged as true, the jury could find the actions of the defendants to be outrageous and outside the bounds of what is usually tolerated by society. *Cochran*, 65 Cal. App. 4th at 494.

Defendants have provided no persuasive authority supporting dismissal of this claim as a matter of law. Accordingly, the motion to dismiss plaintiffs' IIED claims as inadequately pled will be denied.

### 2. State Law Immunity

The individual defendants also assert they are entitled to immunity from plaintiffs' IIED claim under California Government Code § 820.2. (Doc. No. 11 at 8–9.) That provision states "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2. "To determine which acts are discretionary, California courts do not look at the literal meaning of 'discretionary,' because '[a]lmost all acts involve some choice between alternatives.'" *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1379 (9th Cir. 1998) (quoting *Caldwell v. Montoy*, 10 Cal. 4th 972, 981 (1995)). Instead, this immunity protects "basic policy decisions," but not "'operational' or 'ministerial' decisions that merely implement a basic policy decision." *Id.* (quoting *Johnson v. State of California*, 69 Cal. 2d 782, 796 (1968)).

The Ninth Circuit has noted that § 820.2 may sometimes be properly extended to "social workers engaged in investigating allegations of child abuse." *Wallis*, 202 F.3d at 1144. However, the protection only extends to "the decision to investigate, to make an 'in-person response,' and for actions necessary to make a meaningful investigation." *Id.* at 1145. It provides no immunity for "non-discretionary actions or to at least some intentional torts committed in the course of making the investigation, such as battery and false imprisonment." *Id.*; *see also Newton v. Cty. of Napa*, 217 Cal. App. 3d 1551, 1561 (1990) (noting immunity for the decision to investigate "does not exclude the possibility of tortious conduct in making the investigation"). While some California cases have suggested "a more expansive view," and have extended immunity under § 820.2 "to allegedly inadequate or negligent investigations by social workers," *Olvera v. Cty. of Sacramento*, 932 F. Supp. 2d 1123, 1176–77 (E.D. Cal. 2013), the court is unable, at this stage of the proceeding, to conclude that immunity under § 820.2 bars liability on the part of any of the defendants' actions alleged here. Even if the decision to initiate an investigation is a discretionary one, delaying and extending an investigation because of a lack of diligence in obtaining medical records or making necessary consultations with medical staff, as alleged, would not appear to be a "basic policy decision" that would fall under § 820.2. *Cf.*

11

*Olvera*, 932 F. Supp. at 1177 (holding that, even if a decision to perform interviews as part of an investigation was discretionary, doing so without consent and through coercive tactics was not). Here, the allegations of plaintiffs' complaint go far beyond simply alleging the individual defendants were negligent in performing their jobs.

Defendants' citation to the decision in *Becerra v. County of Santa Cruz*, 68 Cal. App. 4th 1450 (1998) is unavailing in this regard. In that case, the California Court of Appeals held "the determination to place a child in a *particular* foster home" was immune from liability pursuant to that code section. *Becerra*, 68 Cal. App. 4th at 1462 (emphasis added). Plaintiffs' claim does not concern where their children were placed—with plaintiff Nunes's sister Patrina—but rather the fact that they were removed from their parents' custody during the investigation, and about the lengthy delay in the investigation once the children were removed from plaintiffs' custody.

For these reasons defendants' motion to dismiss on this state immunity ground will be denied without prejudice, of course, to defendants raising the issue on summary judgment.

**E.     Punitive Damages**

Defendants' argue that plaintiffs' claim for punitive damages should be dismissed because the facts alleged, at most, amount to negligence. (Doc. No. 11 at 9.) Punitive damages are available for actions under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). California law generally allows punitive damages when it can be shown "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). California courts have generally construed this language to mean "intent to injure or willful and conscious disregard of others' rights." *Cruz v. HomeBase*, 83 Cal. App. 4th 160, 167 (2000). Assuming all facts alleged in plaintiffs' complaint to be true, the court cannot conclude at this time that as a matter of law plaintiffs would be unable to show defendants exhibited either a "reckless or callous indifference" or a "willful and conscious disregard" of plaintiffs' rights. The complaint alleges varying conversations of growing animosity between the parties, including what plaintiff Nunes understood to be thinly-veiled

12

threats by defendants to further remove her children from her family. In light of these allegations, it would be premature to dismiss plaintiffs' punitive damages claim at this early stage of the litigation.

### F. Motion for a More Definite Statement

Defendants alternatively move for a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure. (Doc. No. 11 at 10.) Rule 12 states a party may move for a more definite statement if the pleading is "so vague and ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). In moving for a more definite statement, the party "must point out the defects complained of and the details desired." *Id.* Such motions are "not favored by the courts since pleadings in federal courts are only required to fairly notify the opposing party of the nature of the claim." *Griffin v. Cedar Fair, L.P.*, 817 F. Supp. 2d 1152, 1154 (N.D. Cal. 2011) (quoting *Resolution Trust Corp. v. Dean*, 854 F. Supp. 626, 629 (D. Ariz. 1994)). Finally, motions for a more definite statement "should not be granted unless the defendant cannot frame a responsive pleading." *Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F. Supp. 940, 949 (E.D. Cal. 1981).

Here, defendants have identified no details they require in order to be able to frame a responsive pleading to the complaint. As noted at the outset, plaintiffs' complaint is voluminous, and is easily sufficient to notify defendants of the nature of plaintiffs' claims. Therefore defendants' motion for a more definite statement will be denied as well.

## CONCLUSION

For all of the reasons explained above, defendants' motion to dismiss (Doc. No. 10) is denied. Defendants' motions to strike and for a more definite statement are likewise denied.

IT IS SO ORDERED.

Dated: **August 25, 2017**

_____
UNITED STATES DISTRICT JUDGE